```
E1N8ELHC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          10 Cr. 162 (KMW)

WESAM EL-HANAFI,

            Defendant.

------------------------------x

                                        January 23, 2014
                                        2:00 p.m.
Before:

                    HON. KIMBA M. WOOD

                                        District Judge

                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
AMY HECTOR
     Assistant United States Attorney

SARAH KUNSTLER
REBECCA HEINEGG
     Attorneys for Defendant
```

Case 1:10-cr-00162-KMW   Document 157   Filed 02/19/14   Page 2 of 14      2
E1N8ELHC

1               (Case called)
2               THE DEPUTY CLERK:  Will counsel please state their
3    appearances?
4               MS. HECTOR:  Amy Hector for the government.  Good
5    afternoon.
6               THE COURT:  Good afternoon.
7               MS. KUNSTLER:  Good afternoon.  Sarah Kunstler and
8    Rebecca Heinegg for Mr. El-Hanafi.
9               THE COURT:  Good afternoon.
10              And good afternoon, Mr. El-Hanafi.
11              Please have a seat.
12              We are here largely because, Ms. Kunstler, are you
13   still on maternity leave?
14              MS. KUNSTLER:  I am transitioning back this week, your
15   Honor.
16              THE COURT:  Because you're taking over, you probably
17   are going to want to re-review everything and you want to hire
18   another expert.
19              MS. KUNSTLER:  We do, your Honor.  I was assigned the
20   case a year ago December, but I also was not part of the
21   briefing and the submissions in this case over the past six
22   months.  I do have a familiarity with the facts of the case,
23   and I did read the submissions, and I am newly back, and after
24   speaking with Ms. Heinegg, my understanding is that there are
25   both substantive issues of fact in the government's memo and in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    the expert's report that we need to get a handle on, and having
2    used a general practitioner to prepare the first report that we
3    had done, we think that we need a specialist to address the
4    specialist report that the government prepared.
5            THE COURT:  I think you're right, you do need another
6    expert to address the government's specialist.
7            Now, Mr. El-Hanafi is being held in conditions that he
8    and many others view as not inhumane, but close thereto, at the
9    MCC, and so I imagine he would like this to go as swiftly as
10   possible.  Have you talked with him about whether he would like
11   to have a different lawyer who perhaps could turn immediately
12   to his case and get to sentencing more quickly?
13           MS. KUNSTLER:  I have spoken with him, and he is aware
14   that it is his decision and that he doesn't have to proceed
15   with me or Ms. Heinegg.  You can speak with him yourself, but
16   my understanding is that he would like to continue.
17           THE COURT:  With your permission I will address him
18   directly.
19           Mr. El-Hanafi, I want to be sure that you understand
20   that I have the authority to appoint another lawyer for you.
21   And if I did so, I would do my best to find a lawyer who could
22   devote himself or herself full time or almost full time to your
23   case so that your sentencing might proceed a little earlier,
24   maybe a lot earlier than it would with Ms. Kunstler.
25           Ms. Kunstler is a highly respected lawyer, and I can

1  understand why you might wish to stay with her, but I want to
2  make sure that you understand that I believe you have a right
3  to a lawyer who could turn to your case more, devoting more
4  time to it in the near term.  Do you follow me?
5           THE DEFENDANT:  Yes, I understand.
6           THE COURT:  What is your preference?
7           THE DEFENDANT:  I prefer to stay with Ms. Kunstler and
8  Ms. Heinegg.
9           THE COURT:  How long from now do you think it will
10 take for us to have what I believe may end up being a hearing
11 where the doctors are questioned about what kind of treatment
12 is needed in the future?
13          MS. KUNSTLER:  In Ms. Fink's, she asked for an
14 additional three months.  I would like to add that I don't
15 know, given the medical issues in this case and given the
16 factual issues in this case, that a new lawyer could proceed
17 more quickly than we could either.  We are still at this point
18 trying to find an expert to undertake this.  We have spoken to
19 Jerry Tritz and some other lawyers on the CJA panel and are
20 trying to find someone who have worked with CJA before.  It's
21 not so easy with specialists; they are not used to working for
22 this kind of money and having payment delayed this way.  So
23 that is a major concern of ours, and it would be a concern of
24 any lawyer undertaking this.
25          THE COURT:  I understand what you're saying.  I think

1   maybe it's time for me to hear from Ms. Hector as to concerns
2   you have about a delay.
3           MS. HECTOR:  Your Honor, the government, as we
4   expressed in our letter, is concerned about the pace that this
5   sentencing has proceeded.  As your Honor is aware, the
6   defendant pled guilty in June of 2012.  The PSR was completed
7   in October of that year.  The defense submission was done back
8   in June 2013 and now the government's submission in December.
9           The defense hired an expert and submitted an expert
10  report, which of course prompted the government to hire someone
11  too, because that expert report made some pretty very bold
12  claims about the treatment and about the prospects for Mr.
13  El-Hanafi's future given his condition.  So, of course, the
14  government hired an expert to evaluate those same medical
15  reports.
16          We feel that there is an interest in proceeding to
17  sentencing as expeditiously as possible at this point, and we
18  are not sure that an entire another expert is required after
19  the expense that has already been undertaken, and they have
20  already hired an expert, to go back and forth again on this and
21  then have our expert, presumably, review whatever their now
22  second expert puts in.
23          So it's the government's position that we'd like to
24  move forward with this extremely expeditiously.  I understand
25  that Ms. Kunstler has just recently come back from maternity

leave, and we obviously understand that there is some time to get her up to speed, but she has been involved in this case for some time, and, frankly, not much has happened in the last six months except the government's new submission that has gone in.

So I understand that will take some time. But we would like to move as quickly as possible and get this defendant sentenced, as he deserves to be, so that the case can be resolved, and as your Honor pointed out so he can be designated to a facility with even more services than are currently available at his current facility.

THE COURT: Thank you.

MS. KUNSTLER: Your Honor, Ms. Heinegg does point out to me that Mr. El-Hanafi in the past six months has been back and forth to the hospital, does have two new blood clots.

MS. HEINEGG: Advanced new progression of the blood clots much higher than before, for which he had to be sent to another hospital just this past fall, I believe in November, and his condition thus is progressing, it's becoming more serious, and this is also a set of records that we do not yet have in their entirety because they have just been generated so there actually have been some more developments with respect to Mr. El-Hanafi's medical condition.

THE COURT: My goal in reviewing the medical reports, and if we have a hearing examining the doctors, is to find out what his current condition is as of that date and the optimal

1  medical treatment for that condition going forward in the
2  future.  I know that's obvious, but for that reason I believe
3  that it's necessary for the defense to present an expert,
4  someone other than a family doctor.
5          Just out of curiosity, I am wondering how did Dr.
6  Chalfin get hired from British Columbia as a family doctor?
7  This, I think, is a great part of the cause of us needing to
8  delay now.  Had you used an expert in the beginning, we
9  wouldn't be here worrying about finding an expert.
10         MS. KUNSTLER:  Your Honor, it is very difficult to
11 find, even in the first instance, doctors that will work on
12 this.  A number of the doctors that we work with are doctors
13 who are referred to us, frankly, by family and friends who are
14 willing to work on this case or through torture groups.  There
15 are groups of doctors who work on prison issues and torture
16 issues and are willing to take these cases for these rates, as
17 they see basically as volunteering their time.  It's just a
18 very difficult situation.
19         This doctor is actually Ms. Heinegg's mother and
20 that's why she was willing to work on it, because out of family
21 obligation or she was doing a favor for her daughter.  But,
22 yes, it's always very difficult for us to find somebody.  And
23 frankly the first time around Ms. Heinegg, having worked on
24 this case for a year now with his medical condition, didn't
25 really feel that these issues would be in dispute.  These are

1   issues that she has worked on with coordinating his care with
2   the BOP through the facility here and gathering medical
3   records, and it wasn't until the government prepared their
4   report that we understood there was such a wide distance
5   between us and that a specialist was necessary.
6          THE COURT:  Now, I am not going to order this, but I
7   wonder if it might not be appropriate to ask the government
8   doctor to give a list of doctors in the area who are as
9   specialized as he is in Mr. El-Hanafi's condition.
10         MS. HECTOR:  Your Honor, I can just explain that when
11  we were looking for an expert, we basically employed Web
12  searches.  We understood from speaking to some doctors we
13  initially reached out to that the field of vascular surgery is
14  a field of expertise that most deals with deep vein thrombosis
15  and those kinds of issues.  And then we went online and started
16  looking for -- we are in New York City where there are a lot of
17  fantastic hospitals and a lot of specialists, and we just
18  reached out via that method to find someone who was a
19  specialist in this area.  So that's simply how we went about
20  doing it.
21         THE COURT:  Thank you.  It's not my job to advise
22  defense counsel of how to find an expert, but if you are
23  restricting your search to those who are experts in torture
24  cases, you may be looking at a very small universe of doctors,
25  and it may be that you will find someone quite suitable and

1 willing to work on this who is not part of a human rights
2 group.
3      MS. KUNSTLER:  Maybe if we could know what the
4 government was offering per hour and we were able to offer
5 comparable rates per hour, that might help us do that.  But
6 what we are encountering, even when we cold call specialists,
7 is they are not willing to devote the time.
8      THE COURT:  Can you give us the government's payment
9 rate?
10      MS. HECTOR:  I can find out that information, but I
11 don't know what the rate was that was required.  We have a
12 budget office that handles that.  I can find that out.  I don't
13 know how CJA works in terms of paying experts, but I can find
14 out the rate that we paid and let defense counsel know that.
15      THE COURT:  I may have the discretion to allow higher
16 payments in cases where perhaps an affidavit from defense
17 counsel will explain how many doctors you have contacted and
18 how many have said no because of that rate.
19      MS. KUNSTLER:  Thank you, your Honor.
20      MS. HECTOR:  If I just may, defense counsel mentioned
21 that there are some additional records that they have recently
22 obtained, some additional medical records.  I would just
23 appreciate if we could have those as well, and we will, in
24 order to speed this along, however long the process is, I would
25 like our expert to start looking at those so that he can

E1N8ELHC

1   incorporate that into his analysis if it changes in any way.
2              THE COURT:  That's a good idea and it will save time.
3              Is that all OK with you, Ms. Kunstler?
4              MS. KUNSTLER:  Yes.  Absolutely.  We don't have them
5   yet, but as soon as we have those records, we will turn them
6   over.
7              THE COURT:  Will you send them to the Court as well?
8              MS. KUNSTLER:  Yes.
9              THE COURT:  All right.  Why don't we have another
10  conference in a month for me to find out how things are going,
11  make sure that they are going along as quickly as possible.
12             I am familiar with how difficult maternity leave and
13  reentering can be.  Do you now work about half your time on
14  firm work or less?
15             MS. KUNSTLER:  The way it's working currently is I
16  have a caretaker three days a week, although I am building it
17  up to full time.
18             THE COURT:  Why don't we pick a date in about a month
19  from now.  I will be out the last week in February so I would
20  suggest maybe longer than a month.  How would Monday, March 10
21  be?  I could do it any time from noon on.
22             MS. HECTOR:  The government is available.
23             MS. KUNSTLER:  That's fine.
24             THE COURT:  Let's say 3:00.
25             It would be helpful if by March 5 you could write me

1   either a joint letter or letters that at least take into
2   account one another's positions that give me the status of
3   where you are in terms of that and getting an expert.
4           Any objection to an exclusion of time?
5           MS. HECTOR:  I don't think there is even a need for an
6   exclusion.
7           THE COURT:  I'm sorry.  There isn't a need for one.  I
8   am one step behind you.
9           I would like to know Mr. El-Hanafi's current medical
10  condition.  Does he have a support stocking that gives the
11  right amount of compression?
12          MS. KUNSTLER:  I will leave that to Ms. Heinegg to
13  answer.
14          THE COURT:  Ms. Heinegg.
15          MS. HEINEGG:  Mr. El-Hanafi still has not been
16  provided with compression stockings that are properly fitted.
17  He has never been provided with compression stockings that are
18  properly fitted.  This is an ongoing issue.  There also has
19  been disagreement between different doctors as to whether it's
20  even appropriate for him to be wearing the stockings at this
21  point given that the clotting still appears to be progressing.
22          THE COURT:  In other words, that it might be
23  counterproductive to wear a compression stocking?
24          MS. HEINEGG:  Some doctors have expressed that
25  opinion.

1            THE COURT:  Then I would should simply ask, is there
2   anything you would like to have the Court do at this point with
3   respect to medical care for Mr. El-Hanafi?
4            MS. KUNSTLER:  One moment, your Honor.
5            MS. HEINEGG:  I think the issue is that the stockings
6   that he has been provided were never fitted, and so those are
7   counterproductive.  If he could actually be measured and fitted
8   with compression stockings that are the proper size for him,
9   that would be helpful.
10           THE COURT:  Didn't you say just a moment ago that that
11  might be counterproductive?
12           MS. HEINEGG:  The stockings that he has been
13  previously provided are not fitted and it's counterproductive
14  for him to wear.  He needs to be measured so that the stockings
15  can be sized appropriately.
16           THE COURT:  I will call over to -- the MCC?
17           MS. HEINEGG:  Yes, your Honor.
18           THE COURT:  -- the MCC and ask that that happen.
19           MS. KUNSTLER:  Thank you, your Honor.
20           THE COURT:  And I will let you know the result.
21           MS. HEINEGG:  Mr. El-Hanafi is telling me that the
22  reason they have not fitted the stockings yet is that they are
23  waiting on the results of an ultrasound which he has not yet
24  been sent out for.  So I think the issue that we would
25  appreciate the Court's help with is actually having that

1    ultrasound scheduled.
2             THE COURT:  Step one is ultrasound.
3             MS. HEINEGG:  Yes.
4             THE COURT:  When was the need for that identified?
5             MS. HEINEGG:  I believe at the end of last year, in
6    November.
7             THE COURT:  Depending on the results of that, perhaps
8    the next step is a correctly fitted compression stocking.  My
9    call then will try to speed up the ultrasound.
10            MS. HEINEGG:  Thank you, your Honor.
11            THE COURT:  Is there anything else today?
12            MS. KUNSTLER:  Nothing from the defense.
13            MS. HECTOR:  Nothing from the government.  Thank you.
14            THE COURT:  So we will be together again on March 10
15   at which point we may have a better feeling of when the
16   sentencing or at least a hearing with respect to sentencing
17   could take place.
18            I would like to ask your views as to whether we need
19   to have a hearing with respect to whether anything the
20   government did contributed to Mr. El-Hanafi's condition?  I am
21   not sure that that is something that I should take into account
22   in sentencing.  I know I should take into account his medical
23   condition.  But what caused it?  He may have a civil redress,
24   but I am not sure that it factors into sentencing so I would be
25   interested in your views on that if you're ready to speak now,

1   and if not, when you are ready to speak.
2           MS. KUNSTLER:  I think we'd like time to think about
3   it.
4           THE COURT:  That's fine.  We can talk about it when we
5   get together in March.
6           MS. KUNSTLER:  Thank you, your Honor.
7           THE COURT:  All right.  If there is nothing else, then
8   we are adjourned and I will see you in March.  And if Mr.
9   El-Hanafi needs any other medical treatment that he is not
10  getting, let me know right away, and I will try to rectify it.
11          Thank you.
12          (Adjourned)