**LAW OFFICE OF SARAH KUNSTLER**
315 FLATBUSH AVENUE #103 • BROOKLYN, NEW YORK 11217
(718) 783-3682 • FAX (347) 402-2014 • KUNSTLERLAW.NET

January 5, 2015

Honorable Kimba M. Wood
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

                Re:    *United States v. Wesam El-Hanafi*
                       10 Cr. 162 (KMW)

Dear Judge Wood,

We respectfully submit this letter in reply to the government's submissions dated December 19, 2014, and December 23, 2014. The government, in its submissions, has ignored binding case law and misrepresented both defense arguments and the facts of this case.

As an initial matter, the government argues at length that Mr. El-Hanafi is not entitled to a downward departure and is prevented by his plea agreement from asking for one. This is a straw man argument. Defense counsel has explicitly stated that we are seeking a non-Guidelines sentence, not a departure. The United States Supreme Court has been quite clear in its "reject[ion of] an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 50 (2007). Therefore, the standard for a downward departure (although misstated by the government) is irrelevant here, and the government's argument that harsh conditions of confinement can only be considered as a basis for a downward departure – and not for a non-Guidelines sentence – is ridiculous. *See United States v. Pepper*, 131 S.Ct. 1229, 1249 (2011) ("The broad language of [18 U.S.C.] § 3661 does not provide any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing"); *United States v. Behr*, No. S1 03CR1115-02(RWS), 2006 WL

Honorable Kimba M. Wood
January 5, 2015
Page 2 of 10

1586563 at *5 (S.D.N.Y. June 9, 2006) (Sweet, J.) (Imposing a non-guidelines sentence of time served on a defendant housed in 11-South based on the 29 months the defendant spent in the "harsh conditions in Unit 11-South at the MCC.").

The government's remaining errors and misrepresentations are addressed below.

I. **The Government intentionally misrepresents defense counsel's position with respect to the quality of care Mr. El Hanafi has received and will receive while in BOP custody.**

The government preposterously alleges that the defendant and his counsel have "acknowledged that the BOP has been and is capable of providing appropriate medical care." (Govt. Memo 12/19/14 at 2.) This is patently false. We have maintained, and continue to maintain that the BOP has in the past, and will continue in the future to provide inadequate medical care to Mr. El-Hanafi. The government's suggestion that Mr. El-Hanafi's willingness to adjourn his sentencing date demonstrates a tacit endorsement of at the quality of MCC medical care is absurd. Far from a ringing endorsement, the fact that the MCC has shown itself capable of improving the care it provides Mr. El-Hanafi while it is on notice that his condition is an issue at his upcoming sentence, and as it defends itself from a civil lawsuit, is a damning condemnation of Mr. El-Hanafi's prior treatment.

The government and its expert continue to ignore the fact that for 16 months after an initial differential diagnosis of DVT was made, and during a period in which numerous copouts document his complaints of ever worsening symptoms, the BOP did no diagnostic testing to either confirm or rule out this diagnosis, and provided Mr. El-Hanafi with no treatment beyond painkillers and compresses. We have requested time to examine and present Mr. El-Hanafi's medical issues to this Court, and for Mr. El-Hanafi to remain at MCC until these issues can be

fully explored, not because we have confidence in MCC's medical care, but because while he is here, he has the oversight of defense counsel and the attention of this Court. Once he is sentenced, designated, and removed from the jurisdiction of this Court, the spotlight will fade, Mr. El-Hanafi's options for recourse will dim, and the BOP will no doubt return to the inattentive and woefully inadequate care it provided to Mr. El-Hanafi when it thought no one was looking.

The government goes on to argue that while they do "not dispute the standard established by Congress and affirmed in *Pepper*, that there is 'no limitation… on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence,'" they believe that this Court should limit its consideration of the substandard medical treatment provided by the BOP to Mr. El-Hanafi because it pertains to "conduct of a third party." Using this twisted logic, a court could never consider any conditions of confinement suffered by any defendant, as nearly all such conditions are created by third parties, as are most any other abuses and injustices inflicted on a defendant. The government is resorting to these word games because they otherwise have no basis for their argument. The government has not cited and cannot cite a single case supporting their assertion that a defendant's conditions of confinement can only be considered for the purposes of a downward departure and cannot be considered under § 3553(a). The conditions of confinement suffered by a defendant are clearly part of his "background and history," and under *Pepper*, a sentencing court's ability to consider such information has "no limitation." *Pepper*, 131 S.Ct. at 1249.

The fact that some of these issues are also the subject of a civil suit does not somehow remove them from the realm of consideration of this Court. Nor is the government's dereliction

Honorable Kimba M. Wood
January 5, 2015
Page 4 of 10

of its responsibility impossible for the Court to determine – as Dr. Weitz states in his December 8, 2014 letter, attached as Exhibit A to our December 8, 2014 submission, there are clear guidelines for patient care that dictate that diagnostic testing should be done within 24 to 48 hours after DVT is first suspected. Not only is the 16-month delay in diagnostic testing unacceptable, Dr. Weitz concludes it is likely that this delay contributed to the painful, debilitating, and permanent post-thrombotic syndrome from which he now suffers. *See Id*. Even if we were to accept Dr. McKinsey's assertion that Mr. El-Hanafi developed DVT in July of 2011, there was still a two month delay between that date and September 30, 2011, when he received an ultrasound—far outside the 24 to 48 hour limit for an acceptable standard of care.

Furthermore, the government's complaint that consideration of the inadequate medical care received by Mr. El-Hanafi will sideline the sentencing proceedings comes after their expert and the defense's expert have each submitted two reports, given their opinions, examined Mr. El-Hanafi, and made themselves available to give testimony in this matter. The government's objection at this point serves only as an attempt to limit the testimony that the experts can offer the Court. Such a limitation, at this late stage, makes no sense. The experts should be permitted to testify as to all issues within their expertise, and the Court may of course give that testimony whatever weight the Court deems appropriate.

With respect to the conditions at MCC, we have thus far focused our arguments on the substandard medical care provided to Mr. El-Hanafi, whose illness sets him apart from the vast majority of MCC inmates, who have not developed serious illnesses while in custody that require continual medical treatment and care. However, given the government's strained arguments in defense of this care, and its attempts to limit the scope of the experts' testimony in order to

Honorable Kimba M. Wood
January 5, 2015
Page 5 of 10

prevent the Court from a full consideration of issues relevant to Mr. El-Hanafi's sentence , it is worth noting that the poor treatment that Mr. El-Hanafi has received did not occur in a vacuum, but rather, is emblematic of a large scale institutional failure to maintain adequate conditions of confinement that permeates all aspects of inmate life.

Mr. El-Hanafi has spent almost five years of his life as a pretrial detainee on Unit 9-North, a unit divided into individual 75-square-foot cells. The unit has no recreation room, and limited space for inmates to move around outside of their cells. It is poorly ventilated, and due to overcrowding and scarcity of cleaning supplies, it is next to impossible to maintain sanitary living conditions. Filth is everywhere. Germs and bacteria abound. Sickness and disease prevail, including several outbreaks of MRSA. Many cells, including Mr. El-Hanafi's, have fungus and mold that has proven resistant to the cleaning supplies provided. There is an uncontrolled rodent and insect problem. Flies and cockroaches infest the cells and common areas. Mice create nests under inmate beds, and climb all over sleeping inmates and their belongings, including commissary foodstuffs and clean clothes, leaving their droppings wherever they go. There are persistent plumbing issues, during which the facility routinely cuts off the hot water, and in some instances, cuts off the water entirely, making personal hygiene and disease prevention impossible. Fresh air and sunlight are scarce. Inmates sweat in winter and freeze in summer. Exercise and recreation are severely restricted. Proper nutrition is aspirational. Suicide attempts are common and fights break out at least once a week. In short, MCC is a bleak environment for any inmate; for Mr. El-Hanafi, who suffers from a chronic and debilitating illness, and dreads the real possibility that a secondary infection or illness, or uncontrolled bleeding from a physical altercation may well end his life, it is nothing short of a nightmare.

Case 1:10-cr-00162-KMW   Document 201   Filed 01/04/15   Page 6 of 10

Honorable Kimba M. Wood
January 5, 2015
Page 6 of 10

## II. The Guidelines in this case are 240 months – not 360 months to life.

The government argues that Mr. El-Hanafi's sentence "would be" 360 months to life, "if not for the statutory maximum," and that a 20 year sentence "will necessarily entail a huge deviation from the sentence that is otherwise counseled for by the Guidelines." (Govt. Memo 12/19/14, fn 2.) By this circular argument, which essentially amounts to "if the Guidelines weren't what they are, they'd be different," the government invites the Court to commit reversible error, ignoring the plain language of U.S.S.G. § 5G1.2, as well as the Second Circuit's holding in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010).

As the Circuit explained in *Dorvee*, a case in which the initial Guidelines calculation was 262 to 327 months, and the statutory maximum was 240 months, it was plain error for the district court to treat the 262 to 327 month range that would have applied, were it not for the statutory maximum, as the "benchmark for any variance." *Dorvee* 616 F. 3d at 181. Pursuant to U.S.S.G. § 5G1.2(d) and *Dorvee*, the "actual" or "operative" Guidelines is the statutory maximum. *Id.* at 180-181. In this case, as in *Dorvee*, the statutory maximum and starting point for the Court's sentencing analysis is 240 months.

## III. The mechanical application of U.S.S.G. § 3A1.4 in this case leads to an unreasonable sentence beyond what § 3553 requires

Not only is the government's argument contrary to case law, but precedent in this jurisdiction in fact leads to the opposite conclusion; the Guidelines range of 240 months in this case is well above a reasonable sentence for Mr. El-Hanafi, not below.

As recognized by courts both in this district and in the Second Circuit, the automatic enhancements triggered by § 3A1.4 "can lead to unreasonable sentences that are inconsistent

with what § 3553 requires." *United States v. Nayyar*, 09 Cr. 1037 (RWS) (S.D.N.Y. June 5, 2013), 2013 WL 2436564 at 7, *quoting Dorvee*, 616 F.3d at 184. In this case, we arrive at a Guideline of 240 months' imprisonment as a result of the interplay between U.S.S.G. §§ 3A1.4 and 5G1.2(d). Pursuant to U.S.S.G. § 3A1.4, a 12-level enhancement and criminal history category of VI apply because "the offense is a felony that involved, or was intended to promote, federal crime of terrorism." U.S.S.G. § 3A1.4(a). This results in an initial Guidelines calculation of 360-life, and an applicable Guidelines calculation of 240 months pursuant to U.S.S.G. §5G1.2(d). (*See also* PSR ¶ 95.) We do not dispute the application of U.S.S.G. § 3A1.4 to this case. However, it is worth noting that without this enhancement, Mr. El Hanafi would be subject to a Guidelines range of 57-71 months.

In *Nayyar*, the court expressed concern that the application of this automatic terrorism enhancement in the Guidelines "is the result of a congressional directive to the Sentencing Commission, rather than an organic outgrowth of the Commission's own empirical studies," and that "the language of the enhancement is so broad so as to encompass virtually every terrorism-related case, without distinguishing between those cases in which harm occurred and cases in which it did not." *Id.* at 7-8. These concerns apply with equal force to Mr. El-Hanafi.

The *Nayyar* court further held that it would be inequitable to sentence the defendant, who had no criminal history, as if he was "an offender with a lengthy and serious criminal record, who has demonstrated continual recidivism and a lack of ability to reform." *Id* at 8. Mr. El-Hanafi too has no criminal history, and therefore would be in criminal history category I, if his category was not inflated by U.S.S.G. § 3A1.4(b). Here also, it is worth pointing out that Mr. El-Hanafi is not, as the government puts it, "a convicted terrorist." (Govt. Memo at 10.) Mr. El-

Hanafi pleaded guilty to providing material support for terrorism, not engaging in acts of violence or terrorism himself. This distinction is important because, as made clear in our submission dated December 17, 2014, defendants convicted of terrorism are generally sentenced in the 20-30 year range, while those convicted of providing material support are generally sentenced in the 9-15 year range.[1]

The *Nayyar* court also noted that "the prosecutor's ability to lengthen sentences in these circumstances by simply adding essentially duplicative counts, each describing the same criminal conduct, is a circumstance that was not adequately considered by the Sentencing Commission when it devised the formula for consecutive sentencing under § 5G1.2(d)." This is precisely the situation of Mr. El-Hanafi. If the government had not insisted on stacking two counts for the same conduct, then Mr. El-Hanafi's statutory maximum—and the operative Guidelines range-- would be 15 years, not 20.

In sum, while this Court is required to begin by calculating Mr. El-Hanafi's Guidelines range of 240 months as "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. The lack of empirical data supporting the terrorism enhancements to the Guidelines, the government's double-counting, the lack of harm caused by Mr. El-Hanafi, and his lack of criminal history are all factors indicating that a Guidelines sentence is not reasonable in this case.

---

[1] The government implies in their letter dated 12/23/14 that many of those cases are distinguishable because they involve designated terrorist organization that are less bad than al Qaeda; this is a disingenuous argument, and a far cry from their position taken during the sentencing proceedings in those matters.

### IV. Mr. El Hanafi fully and unconditionally accepts responsibility for his conduct and has demonstrated both remorse and rehabilitation.

The government incorrectly argues that Mr. El-Hanafi is seeking a non-guidelines sentence solely on the basis of the medical care he has received while in BOP custody. While litigation surrounding Mr. El-Hanafi's medical care has dominated the proceedings leading up to Mr. El-Hanafi's sentence, this is not the only aspect of Mr. El-Hanafi's history and characteristics before this Court, and not the only grounds for our request for a non-Guidelines sentence. From Mr. El-Hanafi's letter to the Court, attached as Exhibit B to our June 17, 2013 sentencing submission, and the twenty-four (24) letters of support submitted by his wife and other family members[2], it is clear that Mr. El-Hanafi fully and unconditionally accepts responsibility for his conduct and has demonstrated both remorse and rehabilitation.

Counsel met Mr. El-Hanafi in November of 2011. At that point, he had been in custody for more than year and a half. Since then - over more than four years - we have worked closely with him and spent a considerable amount of time with him. We have come to know a man who is totally horrified by and deeply remorseful for his criminal conduct. A man who is respectful of everyone he comes into contact with. A man who cares about others – certainly his family, who mean everything to him – but also his lawyers, his fellow inmates, and prison staff. Gerald Koch is a young man who spent 8 months at MCC for civil contempt for refusing to testify before a grand jury; during that time he shared a cell with Mr. El-Hanafi. Mr. Koch writes to this Court that "Wesam is the definition of a changed man: penitent, caring, and always kind to those around him." (Exhibit A, Letter from Gerald Koch.)

---

[2] Attached as Exhibits C-Y to our July 17, 2013 sentencing submission and Exhibit B to our September 26, 2014 sentencing submission.

Mr. El-Hanafi is a man who has used his time in prison living his commitment to spend each day making up for the wrong he has done. Mr. El-Hanafi knows that he will never be able to change the past, and that he must live with the horror of his actions for the rest of his life. He also understands that his punishment must adequately reflect the seriousness of his criminal conduct. But Mr. El-Hanafi is more than the sum of that conduct.  His actions over the past five years are a testament to the deep and lasting change that he has undergone. For the reasons outlined in this letter, and in all of our prior submissions, we respectfully ask the Court to impose a significantly reduced non-guidelines sentence that takes into account the history and characteristics of Mr. El-Hanafi and is "sufficient, but not greater than necessary" to meet the goals of sentencing under 18 U.S.C. §3553(a).

Thank you for your kind consideration of this letter.

Respectfully submitted,

Sarah Kunstler
Rebecca Heinegg
*Attorneys for Wesam El-Hanafi*

CC:   AUSA Aimee Hector, AUSA John Cronan, AUSA Michael Lockard

Wesam El-Hanafi